JOHN LUKWINSKI, Plaintiff-Appellant, v. STONE CONTAINER CORPO-
RATION, Defendant-Appellee (ITW Signode *et al.*, Defendants).

First District (3rd Division)    No. 1—98—4583

Opinion filed March 8, 2000.

O'Connor, Schiff & Myers, of Chicago (John W. Grove and Jill B. Lewis, of
counsel), for appellant.

Kaplan, Papadakis & Gournis, P.C., of Chicago (Eric D. Kaplan and Dean
Gournis, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:

In this case, plaintiff, John Lukwinski, appeals the order of the circuit court dismissing with prejudice counts III and IV of his sixth amended complaint which alleged claims against defendant, Stone Container Corporation (Stone), for breach of the implied warranties of fitness and merchantability under sections 2—314 and 2—315 of the Uniform Commercial Code—Sales (UCC) (810 ILCS 5/2—314, 2—315 (West 1998))[1] . In dismissing these counts, the court concluded plaintiff could not maintain his warranty claims under section 2—318 of the UCC (810 ILCS 5/2—318 (West 1998)). We have jurisdiction of plaintiff's appeal pursuant to Supreme Court Rules 301, 303 and 304(a) (155 Ill. 2d Rs. 301, 303, 304(a)), and for the following reasons, we affirm.

## BACKGROUND

The following factual statement is derived from the well-pleaded facts contained in plaintiff's sixth amended complaint, which for purposes of review must be accepted as true (*In re Chicago Flood Litigation*, 176 Ill. 2d 179, 184, 680 N.E.2d 265, 268 (1997)), as well as other record materials properly before us.

Plaintiff is employed as a truck driver with FAB Express (FAB), a delivery carrier company. Stone is a manufacturer and seller of corrugated containers, otherwise known as cardboard boxes. Stone manufactures its boxes at a plant located in North Chicago, Illinois, and pursuant to a motor carrier agreement, contracts FAB to deliver the boxes to its customers. As part of the delivery process, Stone organizes its boxes in bundles with the use of pressurized straps made by defendant ITW Signode. Stone then loads the bundles on pallets and into FAB's delivery trucks.

On October 17, 1995, plaintiff, during the course of his employment with FAB and pursuant to FAB's carrier contract with Stone, transported boxes from Stone's North Chicago facility to Stone's customer, Coca-Cola, in Niles, Illinois. Notably, plaintiff was not a party to the sales contract between Stone and Coca-Cola. Plaintiff was simply engaged to deliver Stone's goods to Coca-Cola.

Prior to leaving Stone's facility, plaintiff was allegedly directed by Stone's dispatcher to comply with all requests of Coca-Cola and to participate, as necessary, in the unloading and stocking of the boxes at Coca-Cola's facility. Once at Coca-Cola, plaintiff was allegedly asked by the dock forklift operator to assist in the unloading of the boxes from

---

[1]Plaintiff's amended complaint is also directed against ITW Signode, I.T.W., Inc., I.T.W. Development Company and Illinois Tool Works, which are not parties to this appeal.

the truck and was specifically requested to adjust one of the bundles that had shifted during transport. As plaintiff attempted to reposition this bundle, the pressurized strapping that secured the boxes suddenly broke or separated, causing plaintiff to fall and sustain injuries.

Plaintiff thereafter filed the instant action against Stone and various other defendants that are not parties to this appeal. In his sixth amended complaint, plaintiff alleges claims against Stone for negligence, strict liability, breach of implied warranty of fitness for a particular purpose (count III), and breach of implied warranty of merchantability (count IV). Plaintiff's claim for breach of the implied warranty of fitness alleges that the delivery agreement between Stone and FAB implicitly provided that the boxes would be fit for a particular purpose, namely, delivery. According to the complaint, Stone had reason to know the purpose for which FAB and himself had the boxes, in particular their transport and delivery to Coca-Cola. When FAB agreed to receive and deliver the goods, Stone purportedly knew that FAB and plaintiff relied on it to provide suitable packaging for the transport and delivery of the boxes and, further, that the packaged bundles would be safe for FAB's employees, including plaintiff, during their unloading at Coca-Cola.

In his claim for breach of the implied warranty of merchantability, plaintiff alleges that Stone is a merchant with respect to the manufacturing and selling of boxes. Plaintiff further alleges the delivery agreement between Stone and FAB implicitly provided that the boxes prepared for delivery would be merchantable. The boxes, however, were purportedly not of merchantable quality in that they were unfit for the ordinary purposes for which they are used, "which foreseeably included the use of, transporting, aligning and handling *** [the boxes] while in the possession of FAB." Additionally, the boxes would not pass without objection in "the trade," which presumably would be the corrugated container manufacturing industry.

As to both counts, plaintiff alleges Stone breached its implied warranties of fitness and merchantability to him by: (1) utilizing oversized pallets for transportation of the boxes, thereby resulting in lateral instability; (2) failing to positively attach the bundles of boxes to the pallets; (3) stacking the bundles two or more high without securing them to their respective pallets; (4) failing to properly apply heat sealing to the straps used to secure the bundles; (5) using an inadequate number and size of strapping for the boxes being delivered; (6) failing to use reinforced or crimped metal strapping for the bundles; and (7) causing nicks or abrasions to the bundles' strapping, thereby significantly degrading their strength. According to plaintiff, his injuries were a direct and proximate result of Stone's foregoing breaching conduct.

Stone responded to plaintiff's amended complaint, in part, by filing a combined motion to dismiss the implied warranty claims under sections 2—615(a) and 2—619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2—615(a), 2—619(a)(9), 2—619.1 (West 1998)). In relevant part, Stone asserted plaintiff is not a third-party beneficiary of the implied warranties it extended to its customer, Coca-Cola, and thus could not sustain his warranty claims. As such, Stone argued plaintiff's amended complaint fails to state a cause of action.

The circuit court agreed and dismissed count's III and IV of plaintiff's amended complaint under section 2—615 of the Code. Upon Stone's request, the court entered a finding of no just reason to delay the enforcement or appeal of its ruling pursuant to Supreme Court 304(a) (155 Ill. 2d R. 304(a)), and plaintiff's timely appeal followed.

## ANALYSIS

Although not addressed by either party, we find the amended complaint insufficient to invoke article 2 and its implied warranty provisions. A section 2—615 motion to dismiss attacks the legal sufficiency of the plaintiff's claim and presents the question of whether the complaint states a cause of action upon which relief can be granted. *Grund v. Donegan*, 298 Ill. App. 3d 1034, 1037, 700 N.E.2d 157, 159 (1998). All pleadings are to be construed in a light most favorable to the nonmoving party (*In re Chicago Flood Litigation*, 176 Ill. 2d at 189, 680 N.E.2d at 268), and all well-pleaded facts together with all reasonable inferences drawn therefrom are admitted as true. *Lawson v. City of Chicago*, 278 Ill. App. 3d 628, 634, 662 N.E.2d 1377, 1382 (1996). Conclusions of law and conclusions of fact not supported by allegations of specific fact, however, are not admitted. *Lawson*, 278 Ill. App. 3d at 634, 662 N.E.2d at 1382. Since the question presented by a section 2—615 motion is one of law, this court's review is conducted *de novo*. *Lawson*, 278 Ill. App. 3d at 634, 662 N.E.2d at 1382.

The allegations contained in counts III and IV of plaintiff's amended pleading concern solely the transport agreement between Stone and FAB and assert that Stone extended certain implied warranties to FAB and plaintiff regarding the packaging of the boxes that were delivered to Coca-Cola. These counts further allege that, due to Stone's purported breach of these implied warranties, plaintiff sustained injuries.

■ The law is well settled that article 2 is limited in application to "transactions in goods." 810 ILCS 5/2—102 (West 1998); *Garcia v. Edgewater Hospital*, 244 Ill. App. 3d 894, 899, 613 N.E.2d 1243, 1247 (1993). Section 2—314 of the UCC provides that in every sale of goods conducted by a seller who is a merchant with respect to the goods of

that kind, a warranty that the goods are merchantable is implied, unless excluded or modified. 810 ILCS 5/2—314 (West 1998). Moreover, under section 2—315, when the seller, whether a merchant or not, at the time of contracting has reason to know that the buyer needs the goods for a particular purpose and that the buyer is relying on the seller's skill and judgment in selecting or furnishing the goods, an implied warranty that the goods are fit for such a purpose arises, unless excluded or modified. 810 ILCS 2—315 (West 1998).

As the plain language of the above provisions clearly indicates, the implied warranties under the UCC apply only in cases involving the sale of goods. Hence, where the transaction at issue does not involve a sale of goods, the implied warranty provisions of article 2 are not implicated and are thus inapplicable. "Goods" are defined in relevant part by the UCC to mean "all things *** which are moveable at the time of identification to the contract for sale." 810 ILCS 5/2—105(1) (West 1998). A "sale" is defined as "the passing of title from the seller to the buyer for a price." 810 ILCS 5/2—106(1) (West 1998).

■ The contract between Stone and FAB here is entirely one for the rendition of services. Namely, pursuant to the agreement, Stone contracted FAB to deliver its boxes to its various customers. The contract does not involve the sale of Stone's goods to FAB. Because contracts for the rendition of services are not transactions in goods so as to be covered by the warranty provisions of the UCC (*Boddie v. Litton Unit Handling Systems*, 118 Ill. App. 3d 520, 531, 455 N.E.2d 142, 150 (1983); *Pitler v. Michael Reese Hospital*, 92 Ill. App. 3d 739, 742, 415 N.E.2d 1255, 1257 (1980); 32 Ill. Law & Prac. *Sales* § 141, at 421 (1998)), no implied warranties ran from Stone to FAB, and the provisions of article 2 are not available to plaintiff under the facts alleged in the amended complaint. Consequently, counts III and IV fail to state a cause of action under the UCC.

A review of the record and briefs filed on appeal indicates plaintiff intended to allege that certain implied warranties ran from Stone to Coca-Cola and its employees pursuant to the sale of Stone's boxes. Plaintiff is not a party to Stone's contract with Coca-Cola and, thus, lacks the necessary privity to assert a direct warranty action against Stone. Plaintiff sought to assert a derivative warranty claim under section 2—318 of the UCC, which extends warranty protections to certain nonprivity persons. In pertinent part, section 2—318 states:

> "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." 810 ILCS 5/2—318 (West 1998).

According to plaintiff, this provision permits him to seek recovery against Stone for its alleged breach of implied warranties running to Coca-Cola.

■ Assuming the amended complaint sufficiently alleges claims against Stone under the aforementioned implied warranty theories, as the parties and the circuit court have done, we conclude plaintiff falls outside the class of third-party beneficiaries extended warranty protection by section 2—318 and, thus, cannot maintain his warranty claims.

Plaintiff initially urges this court to adopt an expansive reading of section 2—318. Plaintiff claims section 2—318 essentially allows any party in the horizontal chain of the goods distribution to sue the seller under a warranty theory. In this regard, plaintiff asserts the relevant inquiry is not whether the injured party is in the family or household of the buyer, or a guest in the buyer's home, but rather whether it was reasonable to expect that the party would use, consume or be affected by the seller's goods. Thus, plaintiff asserts section 2—318 authorizes any nonprivity person who was reasonably expected to use, consume or be affected by the seller's goods to bring a warranty cause of action as a third-party beneficiary. In this case, plaintiff contends it was reasonable to expect he would use or be affected by Stone's boxes during the course of their delivery.

Contrary to plaintiff's suggestion, section 2—318 is not unlimited in scope and does not remove the requirement of privity in all cases. On its face, section 2—318 extends warranties, both expressed and implied, to a certain class of nonprivity persons in the horizontal chain of distribution who sustain personal injuries.[2] This class is not limitless, but is confined to members of the buyer's family or household and guests in the buyer's home. The effect of section 2—318 is to permit parties having a certain relationship with the buyer to maintain warranty claims under the UCC despite a lack of privity with the seller of the good. In this regard, section 2—318 reflects only a limited abolition of privity and is not intended to allow recovery by all persons foreseeably affected by defects in the seller's product. 3A R. Anderson, Anderson on the Uniform Commercial Code, § 2—318:27 at 321 (3d ed. rev. 1995). Parties not covered by section 2—318 must still demonstrate privity. See *Board of Education of City of Chicago v. A, C & S,*

---

[2]Horizontal privity concerns the nonprivity of consumers and sellers and refers to those who are not in the distributive chain of a product but who nonetheless use the product and retain a certain relationship with the buyer. On the other hand, vertical privity refers to the relationship between those who are in the distributive chain of the good. *Szajna v. General Motors Corp.*, 115 Ill. 2d 294, 307, 503 N.E.2d 760, 765 (1986).

*Inc.*, 131 Ill. 2d 428, 461, 546 N.E.2d 580, 595 (1989); see generally *Szajna v. General Motors Corp.*, 115 Ill. 2d 294, 301-11, 503 N.E.2d 760, 762-66 (1986).

Section 2—318 was adopted by our General Assembly in 1961 and is identical to the original version drafted by the uniform committee, now commonly known as alternative A. Because many states declined to adopt this version, the uniform committee drafted two alternate versions, B and C, in 1966. Alternatives B and C afford broader coverage than alternative A and extend warranty coverage to a larger class of nonprivity users. Illinois has not adopted either alternative B or C but instead has elected to retain the original version of the section.

In arguing that he qualifies for third-party beneficiary protection, plaintiff actually relies on the wording of alternative B. Alternative B extends warranty protections to "any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured in person by breach of the warranty." Uniform Commercial Code (Sales), 1A U.L.A. § 2—318 (1989). As noted, this provision is not the law in Illinois and thus cannot be invoked by plaintiff to defeat Stone's motion for dismissal. Acceptance of plaintiff's contention here would render the version of the UCC passed by our legislature ineffective and meaningless.

In the alternative, plaintiff claims he was a "guest" of Coca-Cola at the time he sustained his injuries. Notably, section 2—318 extends warranty protections to persons who are guests in the buyer's *"home."* (Emphasis added.) 810 ILCS 5/2—318 (West 1998). The UCC does not provide a definition of the term "home," and no court of this state has considered the matter of whether the premises or property of a business constitutes a "home" for purposes of section 2—318. Notwithstanding, assuming the word "home" encompasses business property such as Coca-Cola's facility, we conclude plaintiff was not a "guest" as contemplated by the UCC.

In interpreting a statute, our primary aim is to ascertain and effectuate the intent of the legislature, and in doing so our first step is to consider the specific wording of the legislation. *Gem Electronics of Monmouth, Inc. v. Department of Revenue*, 183 Ill. 2d 470, 475, 702 N.E.2d 529, 532 (1998). Where the intent can be determined from the plain language of the statute, that intent must prevail (*DiFoggio v. Retirement Board of the County Employees Annuity & Benefit Fund*, 156 Ill. 2d 377, 382, 620 N.E.2d 1070, 1073 (1993)) and, unless otherwise defined, statutory terms are to be ascribed their ordinary and popularly understood meanings. *Gem Electronics*, 183 Ill. 2d at 477-78, 702 N.E.2d at 532; *Texaco-Cities Service Pipeline Co. v. Mc-Gaw*, 182 Ill. 2d 262, 270, 695 N.E.2d 481, 485 (1998).

The term "guest" is not defined in the UCC. Giving the word its ordinary and popular meaning, it is clear plaintiff does not qualify for warranty protection in this regard. "Guest" is defined, in relevant part, as "a person entertained in one's house[;] *** a person to whom hospitality is extended," particularly "one invited to participate in some activity (as an excursion) at the expense of another" (Webster's Third New International Dictionary 1008 (1986)), and "a person who is received and entertained at one's home, club, etc., and who is not a regular member." Black's Law Dictionary 707 (6th ed. 1990). Here, plaintiff was not invited to be entertained or participate in any activity at Coca-Cola. Rather, plaintiff was at Coca-Cola's facility because he was required to be there as part of his job duties with FAB.

Plaintiff further argues that if he does not qualify as a guest under the statute, he falls within the framework of those decisions that have declined against a literal reading of section 2—318 to find that an employee of a purchaser may sue the seller for an alleged breach of warranty where the contracting parties contemplated that the employee was within the class of persons to be extended warranty protection. In *Whitaker v. Lian Feng Machine Co.*, 156 Ill. App. 3d 316, 509 N.E.2d 591 (1987), the plaintiff sued the defendant-vendor under a warranty theory for injuries allegedly suffered as a result of a defective band saw that was purchased from the defendant by the plaintiff's employer. The employee was not in privity with the seller and sought to bring himself within the class of nonprivity persons covered under section 2—318.

On review of the circuit court's ruling dismissing the plaintiff's claim, this court determined our legislature intended for the judiciary "to decide, in accord with common law principles and with the guidance of the UCC, whether warranty coverage should further extend to any *** nonpurchasing users of a product" beyond those persons specified in section 2—318. *Whitaker*, 156 Ill. App. 3d at 320, 509 N.E.2d at 594. According to the court, the designated class is not fixed, but can be expanded to encompass other nonprivity parties in the horizontal chain when warranted by the circumstances of a particular case. *Whitaker*, 156 Ill. App. 3d at 320, 509 N.E.2d at 594; see also *Collins Co. v. Carboline Co.*, 125 Ill. 2d 498, 516, 532 N.E.2d 834, 842 (1988) (recognizing section 2—318 and its commentary leave "a door at least slightly ajar for future extension of some warranties in appropriate circumstances to nonprivity plaintiffs").

Under *Whitaker*, an employee can sue a seller under section 2—318 "as long as the safety of that employee in the use of the goods was either explicitly or implicitly part of the basis of the bargain when the employer purchased the goods." *Whitaker*, 156 Ill. App. 3d at 321, 509

N.E.2d at 595. The court, in finding the plaintiff covered under section 2—318, explained the employer bargained for a band saw that was as safe as any other merchantable band saw, and since "[a] corporation cannot use the band saw at all unless its employees operate it," it concluded the plaintiff's safety was an implicit part of the parties' bargain. *Whitaker*, 156 Ill. App. 3d at 321, 509 N.E.2d at 595.[3]

Significantly, *Whitaker* and its progeny concern solely the situation where the injured party is an employee of the buyer. These cases do not address whether any other party can maintain a warranty claim pursuant to section 2—318 and are thus limited in application to the circumstances under which they were decided. Plaintiff in this case was not an employee of Coca-Cola at the time of his injuries but, rather, was a third party engaged by the vendor to deliver its products. Consequently, plaintiff cannot rely on *Whitaker* to bring himself within the class of parties to whom that case and similar decisions have extended warranty protection.

Plaintiff, recognizing this dilemma, argues he was akin to an employee of Coca-Cola by virtue of the directive he received from Stone's dispatcher and the request for assistance expressed by Coca Cola's forklift operator. We disagree. The record clearly shows that at the time of his injuries plaintiff was acting within the course of his employment with FAB. The instructions of Stone's dispatcher to assist its customer in unloading its goods and the request of Coca-Cola's operator to remove the boxes from the delivery truck, by themselves, are insufficient to transform plaintiff's employee status for purposes of applying *Whitaker* in this case.

As discussed, the courts may enlarge the scope of section 2—318 where the circumstances of the case warrant. Notwithstanding this discretion, we are extremely reluctant, in light of the express wording of the statute, to expand this section's operation absent a compelling and well-founded reason. The policy underlying the *Whitaker* ruling is quite clear. If coverage was not provided to employees of a corporate buyer, any warranties of the seller would be ineffective and extend to no person since it is impossible for a corporation to be the beneficiary. Plaintiff here, other than asserting the need of protecting the general safety of delivery persons, provides no compelling basis under war-

---

[3]The rationale and holding of *Whitaker* have been expressly followed in *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 938, 694 N.E.2d 1021, 1024 (1998), and in *Wheeler v. Sunbelt Tool Co.*, 181 Ill. App. 3d 1088, 1099, 537 N.E.2d 1332, 1340 (1989), and have been recognized as the controlling law in Illinois in *Thomas v. Bombardier—Rotax Motorenfabrik*, 869 F. Supp. 551, 556-57 (N.D. Ill. 1994).

ranty law for the extension of third-party beneficiary coverage under the facts of the case. We similarly fail to discern any such basis. Plaintiff's relationship with Coca-Cola under the facts is too far removed from those relationships warranting protection under section 2—318. Notably, plaintiff is not without a remedy for his injuries and has other legal theories available under which he can pursue relief.

## CONCLUSION

For the foregoing reasons, the order of the circuit court dismissing counts III and IV of plaintiff's sixth amended complaint with prejudice is affirmed.

Affirmed.

CAHILL, P.J., and WOLFSON, J., concur.