THIRD DIVISION

December 26, 2001

No. 1-00-3161

KENNETH FRANK, )   Appeal from the

)   Circuit Court of

Plaintiff-Appellant, )   Cook County.

)

v. )  

) 

EDWARD HINES LUMBER COMPANY, )   Honorable 

)   Thomas E. Flanagan,

Defendant-Appellee. )   Judge Presiding.

     JUSTICE WOLFSON delivered the opinion of the court:

     Plaintiff Kenneth Frank (Frank) filed this products liability suit after a wood roof truss system manufactured by defendant Edward Hines Lumber Company (Hines) collapsed during installation.  Plaintiff was one of three carpenters who were installing the roof when it collapsed.
(footnote: 1)  A jury found in favor of defendant and against all three carpenters.  

     Plaintiff appeals, contending: (1) the trial court erred in denying a jury instruction tendered by plaintiff; (2) the trial court erred in excluding one of plaintiff's exhibits; (3) the trial court erred in allowing two of defendant's exhibits to go to the jury and denying plaintiff's "countervailing exhibits" to go to the jury; (4) the trial court erred in allowing the issue of assumption of risk to be submitted to the jury; (5) the trial court erred in directing the verdict for defendant on the breach of warranty count; (6) the trial court erred in granting defendant's summary judgment motion on the Structural Work Act (740 ILCS 150/1 
et
 
seq.
 (West 1998)) count.

     We affirm.

FACTS

     On June 24, 1991, three carpenters installing a wood roof truss system at the Evergreen Plaza Shopping Center in Vernon Hills were injured when several trusses collapsed.  Hines designed, built, and furnished the truss system to comply with the architect's plans. 

     Frank filed a products liability suit against Hines. In his complaint, Frank included a count alleging violation of the Structural Work Act.  The trial court summarily dismissed this count, finding plaintiff could not show Hines was in charge of the work within the meaning of the Act.  

     The Sixth Amended Complaint, filed after the court granted summary judgment in defendant's favor on the Structural Work Act count, alleged the roof truss system was defective in its design and engineering.  Plaintiff also alleged the truss was improperly packaged, stacked, and delivered and was given to Frank in a deformed, bowed and unsafe condition.  The complaint alleged Hines failed to give Frank adequate instructions for erecting the roof and that Hines did not provide adequate warnings of the dangers posed by the product.  Plaintiff also included counts alleging breach of UCC warranties.

     At trial, the evidence established that Antonio Fanizza was the architect and general contractor for the Evergreen Plaza project.  Fanizza created Artech, Inc. and hired subcontractors through Artech.  Artech employed Louis Garcia (Garcia) as a laborer.  It did not have any other employees.  

     Fanizza's building plans called for prefabricated roof trusses.  Fanizza accepted a bid from Hines for a wood roof truss system.  According to the terms of their contract, Hines was to manufacture, design, build, deliver, and provide instructions for the erection of the trusses.  Hines included lumber to be used as temporary bracing with the package.

     After Hines designed and manufactured the trusses, they were delivered on a flatbed truck.  Hines provided instructions for erecting the trusses, referred to during trial as the "Green Sheet."  Hines also provided structural drawings bearing a structural engineer seal.  Both the Green Sheet and the structural drawings were admitted as exhibits at trial.  

     Artech hired C. Bentley Construction (Bentley) to install the trusses.  Frank was employed by Bentley.  Frank testified that on the day of the accident, the last thing he remembered was telling another worker to get some bracing.  Frank said they had problems installing the trusses because they were bowed or bent.  Frank testified they were delivered bowed and the bowing remained after they were removed from the truck.  Frank said he applied lateral bracing to straighten out the bowing, but did not apply cross-bracing.  Frank said nobody told him the bracing was inadequate during the installation of the trusses.  Frank said he looked at the Green Sheet briefly, but did not have a copy of it. 

     Plaintiff used several exhibits as feasible alternative warnings.  Frank's witnesses noted the differences between these exhibits and the Green Sheet and concluded the information and warnings in these exhibits were more complete than the Green Sheet.  Several witnesses testified that flourescent stickers showing where to use temporary bracing were sometimes affixed to trusses.  However, Hines did not use stickers of this type at the time that the accident occurred.  

     Plaintiff's witnesses testified the trusses were bowed upon delivery.  Fanizza testified he contacted Hines about the bowing and was told it was not a problem.  Plaintiff's witnesses said  the bowing made installation difficult.

     Plaintiff's expert witnesses testified the Green Sheet did not provide adequate instructions and warnings and that the trusses were shipped in a manner that allowed them to bend excessively.  The experts opined the bowing and the inadequate instructions regarding temporary bracing caused the collapse.  They testified there were better instructions and warnings available at the time of the accident.  They agreed that flourescent warning tags placed on the trusses would have helped warn and instruct plaintiffs as to proper bracing and installation.

     Hines' defense centered around its claim that the truss system was not defective and provided adequate instructions and warnings to Frank.  Hines claimed the accident occurred because the contractors did not read the instructions and warnings before attempting to assemble the roof truss system.

     Hines' witnesses testified the builder was responsible for erection and bracing of the trusses.  The bracing materials were provided to the builder along with the trusses.

     Arthur Gurevich, the building commissioner for the Village of Vernon Hills, testified he went to the job site before the accident occurred.  He said he was concerned about the way the trusses were stored.  Once the building crew began to erect the trusses, Gurevich became concerned that they were not adequately braced.  He told a worker named "Kenny" that the crew needed to install cross-bracing.

     Hines' experts testified the Green Sheet adequately instructed and warned plaintiff about proper temporary bracing and installation of the truss system.  They said if the erection crew had properly braced the trusses, they would not have collapsed.  They said the trusses collapsed because the erection crew failed to use the temporary bracing specified in the Green Sheet.  They did not believe the bowing in the trusses caused the collapse.        

     Defendant filed a motion for a directed verdict on the breach of warranty counts of the complaint.  The trial court granted defendant's motion, finding Frank was not an employee of Artech or Fanizza, and was not covered by the UCC warranties that extended only to the buyer and its employees.

     The jury ruled in defendant's favor on the remaining counts.

DECISION

Failure to Give IPI Civil No. 400.10

     Frank contends the trial court erred in refusing to give Illinois Pattern Jury Instruction, Civil, No. 400.10 (2000 ed.)(hereinafter IPI Civil No. 400.10).   

     The decision to give or deny a jury instruction is within the trial court's discretion and a new trial should not be granted unless a party's right to a fair trial has been seriously prejudiced.  
Carey v. Lazzara, Inc.
, 277 Ill. App. 3d 902, 906, 661 N.E.2d 413 (1996).  "The standard for determining whether a trial court abused its discretion in giving or refusing a jury instruction is whether, taken as a whole, the instructions fully, fairly and comprehensively informed the jury of the relevant legal principles."  
Carey
, 277 Ill. App. 3d at 906.

     IPI Civil No. 400.10:

"400.10 Strict Product Liability - Due Care Not a Defense - Personal Injury - One Plaintiff and One Defendant.

     If you decide that the plaintiff has proved all the propositions of his case, then it is not a defense [that the condition of the product could not have been discovered by the defendant][or][that care was used in the manufacture of the product]."  IPI Civil No. 400.10.

     The notes on use that follow the instruction indicate it is to be given only "if the jury heard from suggestion, evidence, or argument that the defendant exercised care in the manufacturing process or could not discover the condition of the product."  IPI Civil No. 400.10, Notes on Use.

     Defendant never argued it should not be held liable because the roof trusses were manufactured with due care.  Instead, Hines argued the trusses were not unreasonably dangerous and based its defense on its claim that the warnings and instructions that were provided were adequate and that the accident occurred because those in charge of the construction failed to read the instructions and warnings.  Defense counsel did not raise the issue of due care in opening or closing argument, and evidence that defendant used due care in manufacturing the trusses was not produced during trial.

     Plaintiff argues "the core" of Hines' defense was "that it manufactured a truss which itself contained no defects and *** provided [warnings and instructions] which told the installer all he needed to know ***."  This defense, plaintiff says, "embraced the concept that [Hines] 'exercised due care.'"  Plaintiff misconstrues the type of argument that a defendant must advance before the trial court is required to give IPI Civil No. 400.10.

     In 
Renfro v. Allied Indus. Equipment Corp.
, 155 Ill. App. 3d 140, 507 N.E.2d 1213 (1987), a case cited by plaintiff, the court said:

     "Plaintiff's Instruction No. 13 is a version of IPI, Civil, No. 400.10 ***.  Here, the jury did hear evidence that when the [product] left the Crown factory it was in compliance with standards promulgated by the American National Standards Institute, and that Crown's vehicle was the 'Cadillac' of [these products].  The jury also saw literature from both Crown and Logisticon touting the safety, quality and durability of their respective products.  In our view, these matters raised an inference of the exercise of care in the manufacture of the products sufficient to justify use of the instruction."  
Renfro
, 155 Ill. App. 3d at 166.

     The instruction is not to be given when a defendant merely argues its product was not unreasonably dangerous.  Otherwise, the instruction would have to be given in virtually all products liability suits.  It is to be given when the defendant counters the plaintiff's claims by arguing it wasn't negligent or a lack of due care did not occur in its manufacture of the product.  The danger is that when a defendant advances this due care in the manufacture argument, the jury's focus will shift from the inherent dangers posed by the product itself to the defendant's actions in creating the product.  

     In a strict liability suit, as contrasted with a negligence claim, a plaintiff is not required to prove the defendant breached a duty of due care.  
Cunningham v. MacNeal Memorial Hospital
, 47 Ill. 2d 443, 454, 266 N.E.2d 897 (1970).  The plaintiff is required to prove only that the product was "unreasonably dangerous."  
Cunningham
, 47 Ill. 2d at 454.  Where a product is unreasonably dangerous, its manufacturer may be held liable even if it used due care in manufacturing the product.  In a trial in which a defendant suggests due care in the manufacture as a defense, IPI Civil No. 400.10 is meant to instruct the jury that, if a product is unreasonably dangerous, whether the manufacturer used "due care" in creating it is irrelevant.  

     Hines did not advance due care in the manufacture as a defense to Frank's allegations.  The trial court did not abuse its discretion in refusing to give IPI Civil No. 400.10.  See 
Davis v. International Harvester Co.
, 167 Ill. App. 3d 814, 828-29, 521 N.E.2d 1282 (1988)(instruction properly refused where defendant did not produce evidence of due care but instead claimed product was not unreasonably dangerous and had not caused plaintiff's injuries).

Frank's Exhibit 224 - The Warning Poster

     Plaintiff contends the trial court erred in excluding Frank's exhibit 224.  Exhibit 224 is a warning poster that enlarges upon the information included in the Green Sheet.  The poster was produced by the Wood Truss Council of America and published in 1992.

     The trial court's determination of admissibility of evidence lies within its sound discretion.  
First Midwest Trust Co. v. Rogers
, 296 Ill. App. 3d 416, 426, 701 N.E.2d 1107 (1998).  A reviewing court will not reverse the trial court's decision absent an abuse of that discretion.  
First Midwest
, 296 Ill. App. 3d at 426.

     The jury saw examples of two feasible alternative warnings.  Several witnesses discussed these alternative warnings at length.  Admitting the warning poster would have been cumulative.  See 
Aguinaga v. City of Chicago
, 243 Ill. App. 3d 552, 572, 611 N.E.2d 1296 (1993)(admissibility of cumulative evidence within discretion of trial court).  Moreover, because the poster was not published until 1992, it is not clear this version of the poster was available before the accident occurred in June of 1991.  We find the trial court's refusal to admit the poster was not an abuse of discretion.

Warning Stickers

     During its deliberations, the jury sent out a note requesting to see the sales contract between Hines and Fanizza, the layout plan, and structural drawings of the trusses (referred to as the "Hugh Cahill" drawings).  Plaintiff objected and asked the court to refuse the jury's request.  

     Alternatively, plaintiff asked that in addition to the three requested exhibits, the jury be sent plaintiff's exhibits 509A and 509B, two flourescent warning stickers.  Plaintiff had earlier asked the trial court to send these exhibits to the jury when it retired to deliberate, but the trial court had denied plaintiff's request after finding the stickers had been used only for "demonstrative purposes" during trial.

     The trial court denied the jury's request to see the sales contract, but allowed the layout plan and the structural drawings to be sent back to the jury room.  The court again refused to send the flourescent warning stickers to the jury.

     "The trial court has considerable discretion in determining whether an exhibit may be taken into the jury room."  
Becht v. Palac
, 317 Ill. App. 3d 1026, 1039, 740 N.E.2d 1131 (2000).  The trial court's decision will not be disturbed on review absent an abuse of that discretion.  
Becht
, 317 Ill. App. 3d at 1040.

     Plaintiff claims "the request from the jury demonstrated its concentration on a particular phase of the dispute which *** should have been equalized by the showing of Frank's countervailing evidence," and cites 
Becht
.

     In 
Becht
, the plaintiff filed a medical malpractice suit against two doctors whom he alleged negligently prescribed a medication which caused him to develop a bone disease.  During its deliberations, the jury sent out a note requesting that it be allowed to see several demonstrative exhibits used by one of the defendants during trial.  The codefendant's counsel objected, arguing all of the evidence should go back or none at all.  The trial court said it would send the exhibits back to the jury only if all of the attorneys could agree.  When the attorneys could not agree, the trial court refused the request.

    We affirmed the trial court, finding, "More than likely, the attorneys were concerned that sending only [the doctor's] exhibits back would unduly emphasize her evidence."  
Becht
, 317 Ill. App. 3d at 1040.  

      Here, the jury was given several of plaintiff's and defendant's exhibits when it retired to deliberate.  There was no danger that two more exhibits, which it requested, would in any way unduly emphasize defendant's evidence.  

     The flourescent warning stickers were used as exhibits during trial and testified to by several witnesses.  The jury had already seen them and did not ask to see them again.  The stickers were in no way directly related to the exhibits the jury did ask to see, though plaintiff claims they were "countervailing."  

     We find the trial court did not abuse its discretion in denying plaintiff's request to send his exhibits back to the jury.

Assumption of Risk

     Frank contends the trial court erred in submitting an assumption of risk instruction to the jury.  According to Frank, none of the evidence at trial supported issuing this instruction.

     "[I]n Illinois, 'all that is required to justify the giving of an instruction is that there be some evidence in the record to justify the theory of the instruction.'" 
Boland v. Kawasaki Motors Manufacturing Corp.
,309 Ill. App. 3d 645, 653, 722 N.E.2d 1234 (2000), quoting 
Leonardi v. Loyola University
, 168 Ill. 2d 83, 101, 658 N.E.2d 450 (1995).

     The instructions issued to the jury in this case included the following:

     "With respect to the claim of Kenneth Frank only, defendant *** claims that the plaintiff Kenneth Frank assumed the risk of injury in the following respect:

     (a) He was aware that the roof trusses could fall if they were not braced during erection to withstand lateral movement;

     The defendant also claims that the foregoing was a proximate cause of Kenneth Frank's injury.

     Plaintiff Kenneth Frank denies that he assumed the risk of injury and also denies that any assumption of the risk on his part was a proximate cause of his injuries."   

     Frank testified he knew the trusses required temporary bracing.  He testified he saw the Green Sheet.  He said he did not cross-brace the trusses, but used only lateral bracing in an attempt to correct for the bowing of the trusses. 

     Gurevich testified he visited the site while the trusses were being installed.  While he was there, he spoke to "Kenny."  Gurevich said he told "Kenny" he believed the trusses were inadequately braced.  Gurevich referred "Kenny" to the Green Sheet, and "Kenny" showed him his copy of the sheet.  Gurevich said he saw the scene after the accident occurred and noticed the cross-bracing he recommended had not been installed.  While Gurevich did not know "Kenny's" last name, there was no evidence indicating anyone else on the job site shared Frank's first name.  Frank admitted that he talked to Gurevich at the site, although he denied anything was said about inadequate bracing.

     Frank claims there was no evidence that he deliberately encountered a known risk.  He supports his contention that the instruction should not have been given with the testimony of one of his expert witnesses:

     "Q: And you would agree with me that even you *** if you had been at the site with your degree of knowledge, given the short time frame in which to analyze the situation, would not have predicted that the bracing being used by those workers on that site would fail; true?

     A: If I were there only with the benefit of looking, I would not be able to predict that it would fail."

     While this may call into question Gurevich's credibility when he claimed he could see the trusses were not adequately braced, credibility questions are left to the jury.  
Aguinaga
, 243 Ill. App. 3d at 560 ("It is the function of the jury to resolve substantial factual disputes requiring either the assessment of the witness' credibility or an election between conflicting evidence").  The fact that the jury heard conflicting testimony on this issue does not mean the trial court should not have issued an instruction on assumption of risk.  

     Gurevich's testimony was sufficient to support the trial court's submission of the assumption of risk instruction.  
Boland
, 309 Ill. App. 3d at 654 (assumption of risk instruction properly issued where plaintiff was orally warned of potential danger).  Plaintiff's expert testimony does not negate Gurevich's claims, it simply creates a factual issue for the jury to resolve.

     It is unlikely the assumption of risk instruction had any impact on the jury in this case.  There were three plaintiffs.  Assumption of risk applied only to Frank.  No one suggested to the jury that assumption of the risk had anything to do with the other two plaintiffs.  Evidence concerning the warnings applied equally to all three.  The jury found against all three.  We find giving the instruction was not an abuse of discretion.

Directed Verdict - Breach of Warranty

     Plaintiff contends the trial court erred in granting defendant's motion for a directed verdict on the breach of warranty count of the complaint.  

     A trial court's decision to grant a directed verdict is reviewed 
de
 
novo
.  
Susnis v. Radfar
, 317 Ill. App. 3d 817, 825-26, 739 N.E.2d 960 (2000).  A motion for directed verdict should be granted if all the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could stand.  
Pedrick v. Peoria & Easter R.R. Co.
, 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967).

     Under section 2-314 of the Uniform Commercial Code (UCC), unless excluded or modified, every sale of goods includes an implied warranty of merchantibility.  810 ILCS 5/2-314 (West 1998). Section 2-315 of the UCC says when the seller has reason to know the buyer needs the goods for a particular purpose and knows the buyer is relying on the seller's skill in selecting the goods, an implied warranty of fitness for a particular purpose is inferred.  810 ILCS 5/2-315 (West 1998).

     Section 2-318 defines the reach of these warranties:

     "Third Party Beneficiaries of Warranties Express or Implied.  A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty.  A seller may not exclude or limit the operation of this Section."  810 ILCS 5/2-318 (West 1998).

     This section of the UCC allows parties having a certain relationship with the buyer to maintain warranty claims under the UCC despite a lack of privity with the seller of the goods.  
Lukwinski v. Stone Container Corporation
, 312 Ill. App. 3d 385, 390, 726 N.E.2d 665 (2000).  While we have held a UCC warranty may extend to the employee of a buyer under section 2-318, 
Whitaker v. Lian Feng Machine Co.
, 156 Ill. App. 3d 316, 321, 509 N.E.2d 591 (1987), it does not extend to non-employees who contract with the buyer to provide a service.  
Lukwinski
, 312 Ill. App. 3d at 393.

     This case is factually similar to 
Lukwinski
.  There, the plaintiff was employed as a truck driver for a delivery carrier company (FAB).  Defendant (Stone) was a cardboard box manufacturer.  FAB contracted with Stone to deliver the boxes to buyers.  Plaintiff was injured while delivering the boxes to a buyer.  He claimed section 2-318 covered him as a third-party beneficiary of the UCC warranty between Stone and the buyer.  We disagreed:

    "Plaintiff *** argues he was akin to an employee of Coca-Cola by virtue of the directive he received from Stone's dispatcher and the request for assistance expressed by Coca Cola's forklift operator.  We disagree.  The record clearly shows that at the time of his injuries plaintiff was acting within the course of his employment with FAB. ***

     As discussed, the courts may enlarge the scope of section 2-318 where the circumstances of the case warrant.  Notwithstanding this discretion, we are extremely reluctant, in light of the express wording of the statute, to expand this section's operation absent a compelling and well-founded reason. *** Plaintiff here *** provides no compelling basis under warranty law for the extension of third-party beneficiary coverage under the facts of the case. *** Plaintiff's relationship with [the buyer] under the facts is too far removed from those relationships warranting protection under section 2-318.  Notably, plaintiff is not without remedy for his injuries and has other legal theories available under which he can pursue relief."  
Lukwinski
, 312 Ill. App. 3d at 393-94.

     In this case, plaintiff does not contend section 2-318 should be extended - instead he stretches the facts by claiming he was "technically *** in Artech's *** employ."  Frank was not in Artech's employ.  He was employed by C. Bentley Builders.  C. Bentley Builders contracted with Artech to erect the trusses.  Section 2-318 does not extend to Frank.  We affirm the trial court's directed verdict on the breach of warranty count.

Summary Judgment - Structural Work Act Count

     Plaintiff contends the trial court erred in granting defendant's motion for summary judgment on the count of the complaint alleging violation of the Structural Work Act.  740 ILCS 150/1 
et
 
seq.
 (West 1994)
(footnote: 2).  

     Review of the trial court's ruling on a motion for summary judgment is 
de
 
novo
.  
Lajato v. AT&T, Inc.
, 283 Ill. App. 3d 126, 135, 669 N.E.2d 645 (1996).  Summary judgment is proper when the pleadings, depositions, and affidavits on file, construed in the light most favorable to the nonmoving party, establish there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  
Lajato
, 283 Ill. App. 3d at 135.

     Section 9 of the Structural Work Act says, in relevant part:

     "Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this Act, shall comply with all the terms thereof ***.

***

     For any injury to person or property, occasioned by any wilful violations of this Act, or willful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby ***."  740 ILCS 150/9 (West 1994).

     A plaintiff must establish the following elements in order to sustain a cause of action for violation of the Act: (1) plaintiff was involved in structural activity; (2) the activity was being performed with reference to a structure; (3) a scaffold or other mechanical device was being used; (4) a defect existed in the construction or use of the device; (5) the defect proximately caused his injuries; (6) the defendant had charge of the work; (7) the defendant willfully violated the Act's safety standard.  
Cockrum v. Kajima, International, Inc.
, 163 Ill. 2d 485, 491, 645 N.E.2d 917 (1994).

     Here, the trial court found plaintiff could not establish a material issue of fact regarding whether Hines "had charge of" the work which resulted in plaintiff's injuries.  

     Plaintiff contends the trial court failed to consider the extent to which Hines provided instructions for the erection of the trusses.  Plaintiff points to deposition testimony indicating the reason Hines delivered the Green Sheet to the job site was to "show how to erect trusses and the correct way to pick them up with the crane."  Plaintiff notes Hines' engineering department was available for consultation and "would have" affirmatively performed work to insure workers' safety, had it been asked to do so.

     The problem with plaintiff's argument is that case law clearly says the question is not whether the defendant "would have" taken more control over the job site if it had been asked to do so.  

     The factors to be considered in determining whether a person "had charge of" the work are: (1) supervision and control of the work; (2) retention of the right to supervise and control the work; (3) constant participation in ongoing activities at the construction site; (4) supervision and coordination of subcontractors; (5) responsibility for taking safety precautions at the jobsite; (6) authority to issue change orders; (7) the right to stop the work; (8) ownership of the equipment used on the jobsite; (9) defendant's familiarity with construction customs and practices; and (10) defendant's ability to assure worker safety or alleviate equipment deficiencies or improper work habits.  
Cockrum
, 163 Ill. 2d at 492-93.

     These factors focus on the amount of control the defendant actually exerted, or retained the right to exert, over the work that resulted in the injury.  Plaintiff failed to establish that Hines took any steps to take actual charge of the work.  Whether Hines could have exerted some control over the work is insignificant.  Plaintiff may recover only where Hines actually exerted control, or was supposed to exert control and failed to do so.  

     Hines' contract with Fanizza was for the manufacture and delivery of the trusses.  Though Hines included instructions for the erection of the trusses with the product, the erection of the trusses was performed by sub-contractors hired by Artech.  A review of the record establishes Hines did not take charge of erection of the trusses once they were delivered, nor did the parties anticipate that it would.  We affirm the trial court's decision granting summary judgment in defendant's favor on this issue.

CONCLUSION

     We affirm the jury's verdict and the trial court orders we have discussed.

     Affirmed.  

HALL, P.J., and CERDA, J., concur.

FOOTNOTES
1: In a related case filed by another plaintiff, we upheld the trial court's summary dismissal of the counts filed against the Truss Plate Institute, a construction trade association.  We found TPI owed no duty to the plaintiff.  
Bailey v. Edward Hines Lumber Co.
, 308 Ill. App. 3d 58, 719 N.E.2d 178 (1999).

2:  The Structural Work Act was repealed in 1995, but because it was in effect when the trusses collapsed it applies to this case.  See 
Atkins v. Deere & Co.
, 177 Ill. 2d 222, 224, 685 N.E.2d 342 (1997)(causes of action which accrued prior to effective date of repeal are preserved).