TIVOLI ENTERPRISES, INC., Plaintiff-Appellant, v. BRUNSWICK BOWLING AND BILLIARDS CORPORATION, Defendant-Appellee.

Second District   No. 2—94—0022

Opinion filed February 16, 1995.

William C. North, of Downers Grove, for appellant.

Tracy D. Kasson, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

The plaintiff, Tivoli Enterprises, Inc. (Tivoli), appeals from orders of the circuit court of Du Page County dismissing its amended complaint and first amended complaint filed against the defendant, Brunswick Bowling and Billiards Corporation (Brunswick), pursuant to section 2—619(a)(5) of the Code of Civil Procedure (Code), which provides for involuntary dismissal of actions not commenced within the time limited by law (735 ILCS 5/2—619(a)(5) (West 1992)). We affirm.

The record reveals the relevant facts to be as follows. Tivoli is an Illinois corporation which operates Tivoli Bowling Lanes (Tivoli Lanes), in Downers Grove, Illinois. Brunswick is a Delaware corporation licensed to do business in Illinois. On March 20, 1985, the parties entered into a Brunswick form contract entitled "Construction and Equipment Order" whereby Tivoli purchased from Brunswick material for the assembly, construction and installation of items consisting of 12 replacement bowling lanes with a synthetic surface called armor plate and equipment consisting of a lane-cleaning tool.

At that time, the bowling lanes at Tivoli Lanes were wooden. Brunswick performed a feasibility study and then delivered and installed the armor plate replacement lanes in July 1985. The contract provided a one-year warranty on the newly installed lanes, through approximately June 1986. By the end of 1985, Tivoli began experiencing problems with the lanes. Over the next several years, Tivoli repeatedly sought the assistance of Brunswick in remedying the problems, but the problems only worsened. In 1992, Tivoli consulted with Ted Wells, an expert in the repair and replacement of bowling lanes, regarding the problems with the lanes. Wells opined that the lane distortions were the result of moisture seeping between the original and synthetic replacement lane beds, and that Brunswick should not have installed the synthetic lanes in light of the atmospheric conditions at Tivoli Lanes.

On July 2, 1992, Tivoli filed a complaint against Brunswick for breach of contract. Brunswick filed a section 2—619(a)(5) motion to dismiss the complaint, claiming that the action was barred by the four-year statute of limitations applicable to breach of contract actions for the sale of goods. On August 19, 1992, the trial court granted Tivoli leave to amend its complaint and leave to respond to Brunswick's motion. The court also set a date for hearing on Brunswick's motion. On September 3, 1992, Tivoli filed an amended complaint against Brunswick for breach of contract. Thereafter, Tivoli filed a response to Brunswick's motion to dismiss to which Brunswick filed a reply.

On January 8, 1993, Tivoli filed a motion to compel Brunswick to file answers to interrogatories served by Tivoli. By order dated January 25, 1993, the trial court denied the motion to compel.

Hearing on Brunswick's motion to dismiss the amended complaint occurred on February 26, 1993. The trial court granted the motion and dismissed the amended complaint. The court again granted Tivoli leave to amend and file a first amended complaint.

Tivoli subsequently filed its first amended complaint for breach of contract, which for the first time included allegations of fraudulent concealment. Brunswick again filed a section 2—619(a)(5) motion to dismiss. Tivoli thereafter filed a response to the motion. Brunswick filed a reply and an affidavit of Warren C. Bradley, Brunswick's director of warranty administration. Tivoli then filed an amended counteraffidavit of Donald Hocking, manager of Tivoli Lanes, in support of its response. Hearing on Brunswick's motion to dismiss occurred on December 6, 1993, at which time the trial court issued an order granting Brunswick's motion and dismissing Tivoli's first amended complaint with prejudice. The court's order was entered on December 9, 1993, *nunc pro tunc* December 6, 1993.

Tivoli filed a notice of appeal from the trial court's order dismissing its amended complaint, the order dismissing its first amended complaint and the order denying its motion to compel. Brunswick has filed a motion to strike a portion of Tivoli's reply brief. Brunswick's motion was taken with the case.

■ As a preliminary matter then, we must dispose of Brunswick's motion to strike a portion of Tivoli's reply brief. Brunswick contends that Tivoli requested reversal of the trial court's January 25, 1993, order denying Tivoli's motion to compel for the first time in its reply brief. Brunswick has moved to strike that portion of Tivoli's reply brief. Illinois Supreme Court Rule 341(g) requires that a reply brief "shall be confined *strictly* to replying to arguments presented in the brief of the appellee." (Emphasis added.) (145 Ill. 2d R. 341(g).) Moreover, this court has previously stated its position that issues raised for the first time in the reply brief do not merit consideration on appeal. (*Britamco Underwriters, Inc. v. J.O.C. Enterprises, Inc.* (1993), 252 Ill. App. 3d 96, 98.) Inasmuch as we find the issue of the reversal of the trial court's January 25, 1993, order to be presented for the first time in Tivoli's reply brief, we grant Brunswick's motion to strike that portion of the reply brief requesting reversal of said order.

We turn now to the merits of this appeal. Tivoli initially contends that the trial court improperly dismissed its cause of action against Brunswick. Tivoli's cause of action against Brunswick was predicated upon a breach of the contract executed by the parties on March 20, 1985. The breach of contract cause of action was first asserted in Tivoli's initial complaint which was filed on July 2, 1992, and was reasserted in Tivoli's amended complaint and first amended complaint. The trial court dismissed the amended and first amended complaints as untimely. Tivoli argues that its breach of contract claim as set forth in its first amended complaint was timely filed given that the basis for the claim had been fraudulently concealed by Brunswick. Brunswick, on the other hand, contends that there was no fraudulent concealment.

●2 The statute of limitations which governs breach of contract actions for the sale of goods is set forth in section 2—725 of the Uniform Commercial Code-Sales (UCC) and provides that such actions must be brought within four years after the cause of action has accrued. (810 ILCS 5/2—725(1) (West 1992).) The cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. 810 ILCS 5/2—725(2) (West 1992).

In its first amended complaint, Tivoli alleges that Brunswick breached the contract by failing to perform a proper feasibility study

prior to delivering and installing the lanes in July 1985. Therefore, section 2—725 of the UCC requires the claim to have been brought by July 1989. In the instant case, Tivoli did not assert its breach of contract claim until July 2, 1992, approximately seven years after the cause of action had accrued. Thus, the trial court found that Tivoli's claim was not timely and dismissed the complaints pursuant to section 2—619(a)(5) of the Code.

●3 Tivoli takes the position, however, that due to Brunswick's fraudulent concealment the statute of limitations governing its claim against Brunswick is set forth in section 13—215 of the Code, which provides as follows:

> "If a person liable to an action fraudulently conceals the cause of action from the knowledge of the person entitled thereto, the action may be commenced at any time within 5 years after the person entitled to bring the same discovers that he or she has such cause of action, and not afterwards." (735 ILCS 5/13—215 (West 1992).)

Tivoli asserts that its breach of contract claim against Brunswick was timely since Brunswick fraudulently concealed the existence of the claim, Tivoli first discovered the claim through Wells' expert opinion in 1992, and the claim was made on July 2, 1992, within five years of the date Tivoli discovered the claim.

Illinois law provides that where a plaintiff alleges that the fraudulent concealment of a cause of action has tolled the statute of limitations, the plaintiff must demonstrate that the defendant took affirmative acts to prevent, and did in fact prevent, the discovery of the claim. (*Foster v. Plaut* (1993), 252 Ill. App. 3d 692, 699.) In its first amended complaint, Tivoli alleged various actions by Brunswick as having constituted fraudulent concealment of Tivoli's breach of contract cause of action. Included among these allegations were: (1) Brunswick's failure to conduct a proper feasibility study at Tivoli Lanes and its continued assurances that the feasibility study was done properly; (2) Brunswick's having advised Tivoli that installation of the armor plate system was feasible despite obvious evidence of dampness and water conditions at Tivoli Lanes; (3) Brunswick's failure to advise Tivoli that the original lane bed was too wide for Brunswick's armor plate system to be installed over it, allowing cleaning and maintenance moisture to enter the space between the original and replacement beds causing significant lane distortions; (4) Brunswick's indications in a March 29, 1988, letter to Tivoli that any problems at Tivoli Lanes could be remedied satisfactorily; and (5) Brunswick's continued concealment of the problems at Tivoli Lanes while assuring Tivoli in a March 16, 1990, letter that Brunswick would do its best to resolve the problem.

■ Upon careful review of the record, we do not find that Brunswick prevented the discovery of Tivoli's cause of action or induced Tivoli to avoid filing suit in a timely fashion. Tivoli began experiencing problems with the lanes by the end of 1985 and the problems did not go away. We note two letters of significance which were attached to the Bradley affidavit. In one letter, dated May 3, 1988, Brunswick communicated through its field service manager, John VonderHaar, to the president of Tivoli Lanes, Willis Johnson:

> "Although the labor warranty had expired in July 1986 (1 year), Brunswick did in this case repair the item noted above at no charge to Tivoli Lanes, however, any additional work required in the future caused by moisture noted above will be on a charge basis."

Moreover, in a letter dated February 27, 1990, from Johnson to J.H. Bennett, Jr., senior vice-president of sales and service at Brunswick, Tivoli admitted to the following:

> "Basically, a couple of years ago we were told by Brunswick that any further problems with the lanes were ours. I did not agree with this because I believe that the problems are a result of putting down the armor plate."

These letters evidence the fact that Tivoli had been informed on at least two occasions in 1988 that Brunswick was washing its hands of future responsibility for the condition of the lanes. Tivoli was at that time within the four-year statute of limitations time frame for the filing of a breach of contract action relative to the lanes. Tivoli could have brought suit for breach of contract at that time, but did not. Under these circumstances, we find no fraudulent concealment of Tivoli's cause of action by Brunswick.

The record further reflects that Tivoli sought an explanation for the lane problems with sources other than Brunswick. The Hocking affidavit states, in relevant part:

> "We then sought help from others in the bowling industry in an effort to determine the cause of the continuing problem with the bowling lanes. For some time we were unable to find knowledgeable individuals in the bowling industry who were willing to testify or make comments against Brunswick because of its prominent position in the bowling industry."

Brunswick did not induce Tivoli to avoid filing suit. The record substantiates that Tivoli knew of its problems with the lanes by the end of 1985, claimed the contract to have been breached by July 1985, and had been informed that Brunswick would no longer bear responsibility for the lanes as of May 1988. Yet, Tivoli did not secure an expert witness to testify on its behalf in support of a breach of contract action against Brunswick until 1992. Even if we were to find

Brunswick concealed the breach of contract action through fraud, which we do not, Tivoli could have investigated the source of its problems and filed suit by July 1989. Where the party affected by fraud could have discovered it through the exercise of ordinary diligence, section 13—215 of the Code does not toll the running of the limitation period if a reasonable time remained to file suit. (*Blonder v. Watts* (1988), 166 Ill. App. 3d 633, 635.) Here, had Tivoli exercised diligence, its action would not have been barred. We will not reward Tivoli for sleeping on its rights and therefore decline to disrupt the trial court's dismissal of Tivoli's untimely complaints.

Tivoli next contends on appeal that a proper feasibility study was a condition precedent to the contract and that Brunswick's failure to conduct such a study warrants recision of the contract and renders any statute of limitations challenge irrelevant. Brunswick takes the position that the contract did not require a feasibility study and further that Tivoli waived this issue because Tivoli failed to assert it in its complaint.

■ At the outset, we must consider Brunswick's contention that Tivoli's request for recision of the contract based on the failure of a condition precedent was raised for the first time on appeal and thus has been waived. This court has previously held that the failure to raise an issue in the trial court constitutes a waiver of the issue for purposes of appeal. (*Joseph Frazer, D.D.S., & George D. Dallas, D.D.S. v. Dettman* (1991), 212 Ill. App. 3d 139, 148.) Our review of Tivoli's first amended complaint, however, leads us to conclude that, while Tivoli did not expressly request recision of the contract in its prayer for relief, it did raise the issue of the feasibility study as a condition precedent to the contract. Accordingly, we do not find the issue to have been waived.

■ As a general rule of contract law, "[a] condition precedent is one which *must be* performed before a contract becomes effective or which *is to be* performed by one party to an existing contract before the other party is obligated to perform." (Emphasis added.) (*Godare v. Sterling Steel Casting Co.* (1981), 103 Ill. App. 3d 46, 52.) Upon review of the contract language, we find that while Brunswick reserved the right to perform a feasibility study, which it did perform, Brunswick was not required to do so. Thus, performance of a feasibility study was not a condition precedent to the contract; rather, the contract became effective at the time of its execution on March 20, 1985.

■ Tivoli further contends that the contract is for services rather than goods and, therefore, the contract falls outside the ambit of article 2 of the UCC, which is limited to transactions in goods, and its

four-year statute of limitations. Brunswick, on the other hand, argues that the contract is predominantly one for the sale of goods, with services incidental thereto, and that the trial court properly found Tivoli's action to have been barred by the four-year statute of limitations set forth in section 2—725 of the UCC.

The scope of article 2 of the UCC is limited to transactions in goods. (810 ILCS 5/2—102 (West 1992).) We find the contract between Tivoli and Brunswick to be a contract both for the sale of goods *and* services. Accordingly, we must determine whether the contract comes within the scope of article 2 of the UCC.

Illinois courts, including this court, have repeatedly found that the test of the applicability of the UCC to a contract for the sale of goods and for services is whether the predominant purpose of the contract is for services or for the sale of goods. *Bob Neiner Farms, Inc. v. Hendrix* (1986), 141 Ill. App. 3d 499, 501; *Yorke v. B.F. Goodrich Co.* (1985), 130 Ill. App. 3d 220, 223; *Boddie v. Litton Unit Handling Systems* (1983), 118 Ill. App. 3d 520, 531; *Meeker v. Hamilton Grain Elevator Co.* (1982), 110 Ill. App. 3d 668, 670.

Tivoli argues that the predominant factor test is inappropriate here because neither goods nor services clearly predominated. Where neither goods nor services predominate, Tivoli asserts that the trial court is to focus on whether the gravamen of the action involves goods or services. In support of this assertion, Tivoli cites to section 2—102:04 of Professor Hawkland's Uniform Commercial Code Series (W. Hawkland, Uniform Commercial Code Series § 2—102:04, at 11-12 (1982)). Yet, Tivoli does not cite a single Illinois case applying the gravamen of the action test.

In deciding this case, we follow the doctrine of *stare decisis*, which dictates that we abide by previously decided cases. (*Bossert v. Tate* (1988), 183 Ill. App. 3d 868, 869.) In light of the well-established precedent in this State applying the predominant factor test, we find the predominant factor test to be the appropriate test in determining whether this contract fell within article 2 of the UCC.

■ Applying the predominant factor test to the contract at hand, we find the contract to be predominantly one for the sale of goods, with services incidental thereto. First, the contract's introductory language states that Tivoli was ordering from Brunswick: (1) material for the assembly, construction and installation of items identified as *12 replacement bowling lanes*; and (2) equipment identified as a *lane-cleaning tool*. This suggests the thrust of the contract as being one for the sale of goods. Second, the contract provides for shipment and installation of the material and equipment by Brunswick. This too suggests the contract to be primarily for the sale of goods, which

can be shipped and installed, unlike services. Third, the contract specifies a total sales price of $74,655, which includes sales tax. Such tax is found in the sale of goods, but not services. Finally, the contract warrants the lanes to be free from defects in materials and workmanship for five years. This warranty runs to the goods which Brunswick provided, not the services incidental thereto.

We do not dispute that the services performed by Brunswick in furtherance of the contract were substantial. The contract provides that Brunswick reserved the right to perform a feasibility study. Brunswick did, in fact, perform this study. Brunswick also supplied the labor necessary for the installation of the lanes. However, we do not find these service aspects to render the contract as one predominantly for service. See *Bonebrake v. Cox* (8th Cir. 1974), 499 F.2d 951, 958 (where the court found a contract for the sale and installation of bowling equipment concerned predominantly the sale of goods, even though the amount of services rendered was substantial).

Since we find the contract to be predominantly one for the sale of goods with services incidental thereto, the contract falls within the scope of article 2 of the UCC. We find that the trial court properly applied the four-year statute of limitations set forth in section 2—725 of the UCC to bar Tivoli's breach of contract complaints against Brunswick. See *Republic Steel Corp. v. Pennsylvania Engineering Corp.* (7th Cir. 1986), 785 F.2d 174, 182 (where the court found a contract to be predominately for the sale of two furnaces, with the rendition of engineering, design, installation, and purchase-agency services incidental thereto and where the court then applied the UCC's four-year statute of limitations to bar the plaintiff's breach of contract claims).

On appeal, Brunswick raises the issue of whether Tivoli has a breach of contract claim at all. Since we find the trial court to have properly dismissed Tivoli's breach of contract complaints as untimely, we need not address this issue.

For the foregoing reasons, we affirm the trial court's orders dismissing Tivoli's complaints pursuant to section 2—619(a)(5) of the Code.

Affirmed.

INGLIS and BOWMAN, JJ., concur.