NO. 4-07-0061          Filed 2/26/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| GENE JANNUSCH and MARTHA JANNUSCH, | ) | Appeal from |
| Plaintiffs-Appellants, | ) | Circuit Court of |
| v. | ) | McLean County |
| LINDSEY NAFFZIGER and LOUANN NAFFZIGER, | ) | No. 05L198 |
| | ) | |
| Defendants-Appellees. | ) | Honorable |
| | ) | Charles G. Reynard, |
| | ) | Judge Presiding. |

_____

JUSTICE COOK delivered the opinion of the court:

Plaintiffs, Gene Jannusch and his wife, Martha, brought this action for breach of an oral contract against defendants, Lindsey Naffziger and her mother, Louann Naffziger. Following a bench trial, the trial court found in favor of defendants. Plaintiffs appeal. We reverse and remand with directions.

I. BACKGROUND

Plaintiffs operated a business, Festival Foods, which served concessions to the general public at festivals and events throughout Illinois and Indiana from late April to late October each year. The assets of the business included a truck and servicing trailer and equipment such as refrigerators and freezers, roasters, chairs and tables, fountain service and signs and lighting equipment.

Defendants were interested in purchasing the concession business, met several times with plaintiffs, and observed the

business in operation. Gene testified that on August 13, 2005, plaintiffs entered into an oral agreement to sell Festival Foods to defendants for $150,000. For the $150,000, defendants would receive the truck and trailer, all necessary equipment, and the opportunity to work at event locations secured by plaintiffs. Defendants paid $10,000 immediately, with the balance to be paid when defendants received their loan money from the bank. Defendants took possession of Festival Foods the next day and operated Festival Foods for the remainder of the 2005 season. Gene acknowledged that the insurance and titles to the truck and trailer remained in his name because he had not yet received the purchase price from defendants.

Louann acknowledged testifying during a deposition that an oral agreement to purchase Festival Foods for $150,000 existed but later testified she could not recall specifically making an oral agreement on any particular date. Lindsey testified she and Louann met with plaintiffs on August 13, 2005, and paid the $10,000 for the right to continue to purchase the business because plaintiffs had another interested buyer. She also stated that the parties agreed defendants would run Festival Foods as they pursued buying the business. According to Lindsey, Gene suggested the parties sign something and she replied that defendants were "in no position to sign anything" because they had not received any loan money from the bank and did not have an attor-

ney.  The following week, Lindsey consulted with an attorney regarding the legal aspects of buying and owning a business.  She asked the attorney to prepare a contract for the purchase.  Ultimately, the bank approved defendants for a loan.  Lindsey admitted taking possession of Festival Foods, receiving the income from the business, purchasing inventory, replacing equipment, paying taxes on the business and paying employees.

Defendants operated six events, three in Indiana and three in Illinois.  Gene attended the first two festivals in Valparaiso and Auburn, Indiana, with defendants, who paid him $10 an hour and paid for his lodging.  Gene and Louann testified that plaintiffs' minimal involvement with the operations after August 13 was merely as advisors to defendants, who were unfamiliar with this type of business.  Two days after the business season ended, defendants returned Festival Foods to the storage facility where it had been stored by Gene.  Gene testified he had canceled his lease with the storage facility, telling the owner that he had sold his business.  Someone at the storage facility called Gene and reported that Festival Foods had been returned.  Thereafter Gene attempted to sell Festival Foods, but was unsuccessful.  Lindsey testified one of the reasons defendants returned Festival Foods was because the income from the events they operated was lower than expected.  She stated Gene specifically asked defendants to run certain events for him and he ran the events where

he was present.  She testified Gene asked for the trailer back, stating he needed it "so he could make money on it for the end of the year," and that Gene stated he did not have money to buy back the inventory.

The trial court first held that the Uniform Commercial Code (UCC) (810 ILCS 5/1-101 et seq. (West 2004)) governed the issues raised in this case, rejecting defendants' argument that a sale of goods was not involved.  The trial court then found that there was a contract formed but that the evidence was insufficient to establish by a preponderance of the evidence that there was a meeting of the minds as to what that agreement was.  "If this is an agreement to reach an agreement, I suspect that the action for the price must fail."

## II. ANALYSIS

Where there are no questions as to the facts essential to a purported contract, the existence of the contract is a question of law.  Magee v. Garreau, 332 Ill. App. 3d 1070, 1076, 774 N.E.2d 441, 446 (2002).  In general, the construction or interpretation of a contract is a matter to be determined by the court as a question of law.  Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill. 2d 100, 129, 835 N.E.2d 801, 821 (2005).

### A. Application of UCC

Defendants argue the UCC should not apply because this

case involves the sale of a business rather than just the sale of goods. The "predominant purpose" test is used to determine whether a contract for both the sale of goods and the rendition of services falls within the scope of article 2 of the UCC. 810 ILCS 5/2-101 through 2-725 (West 2004). A contract that is primarily for services, with the sale of goods being incidental, will not fall within the scope of article 2. Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill. 2d 325, 352-53, 770 N.E.2d 177, 194-95 (2002). "[W]hether the contract was predominantly for goods or services is generally a question of fact." Heuerman v. B&M Construction, Inc., 358 Ill. App. 3d 1157, 1165, 833 N.E.2d 382, 389 (2005). Certainly significant tangible assets were involved in this case. Cf. Fink v. DeClassis, 745 F. Supp. 509, 516 (N.D. Ill. 1990) (intangible assets accounted for $1 million of the total purchase price of $1.2 million). The evidence presented in this case was suffi-cient to support the conclusion that the proposed agreement was predominantly one for the sale of goods.

## B. Statute of Frauds

The UCC requires that contracts for the sale of goods in excess of $500 be in writing. 810 ILCS 5/2-201(1) (West 2004). However, a contract is enforceable even though it does not meet the requirements of subsection (1) if it is valid in other respects and "the party against whom enforcement is sought

admits in his pleading, testimony[,] or otherwise in court that a contract for sale was made."  810 ILCS 5/2-201(3)(b) (West 2004). Also, an oral contract for the sale of goods which has been partially performed is enforceable.  Hartbarger v. SCA Services, Inc., 200 Ill. App. 3d 1000, 1017, 558 N.E.2d 596, 606-07 (1990); see 810 ILCS 5/2-201(3)(c) (West 2004) (an oral contract is enforceable "with respect to goods for which payment has been made and accepted or which have been received and accepted").

### C. Formation of Contract

Under the UCC:

"(1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

(2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."  810 ILCS 5/2-204 (West 2004). Defendants argue that nothing was said in the contract

- 6 -

about allocating a price for good will, a covenant not to compete, allocating a price for the equipment, how to release liens, what would happen if there was no loan approval, and other issues.  Defendants argue these are essential terms for the sale of a business and the Internal Revenue Service requires that parties allocate the sales price.  "None of these items were even discussed much less agreed to.  There is not an enforceable agreement when there are so many essential terms missing."

"A contract may be enforced even though some contract terms may be missing or left to be agreed upon, but if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract."  Academy Chicago Publishers v. Cheever, 144 Ill. 2d 24, 30, 578 N.E.2d 981, 984 (1991).  In Cheever, the widow of John Cheever signed an agreement to publish a collection of Cheever's short stories.  Cheever, 144 Ill. 2d at 27, 578 N.E.2d at 982.  The Illinois Supreme Court held there was no valid and enforceable contract because there was no agreement as to the length and content of the book, who would decide which stories to include, the criteria used by the publisher in determining whether the manuscript was "satisfactory," or other terms.  Cheever, 144 Ill. 2d at 29-30, 578 N.E.2d at 984.  "[I]n fact, all they had really agreed to was a tentative title (The Uncollected Stories of John Cheever)."  Dawson v. General Motors

- 7 -

Corp., 977 F.2d 369, 373 (7th Cir. 1992).

The essential terms were agreed upon in this case. The purchase price was $150,000, and the items to be transferred were specified. No essential terms remained to be agreed upon; the only action remaining was the performance of the contract. Defendants took possession of the items to be transferred and used them as their own. "Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller." 810 ILCS 5/2-602(1) (West 2004). Defendants paid $10,000 of the purchase price. The fact that defendants were disappointed in the income from the events they operated is not inconsistent with the existence of a contract.

The trial court noted that "the parties have very very different views about what transpired in the course of the contract[-]formation discussions." It is not necessary that the parties share a subjective understanding as to the terms of the contract; the parties' conduct may indicate an agreement to the terms. Steinberg v. Chicago Medical School, 69 Ill. 2d 320, 330-31, 371 N.E.2d 634, 640 (1977). The conduct in this case is clear. Parties discussing the sale of goods do not transfer those goods and allow them to be retained for a substantial period before reaching agreement. Defendants replaced equipment, reported income, paid taxes, and paid Gene for his time and

expenses, all of which is inconsistent with the idea that defendants were only "pursuing buying the business." An agreement to make an agreement is not an agreement, but there was clearly more than that here.

The trial court believed it was significant that Lindsey told Gene that defendants were "in no position to sign anything" because they had not received any loan money from the bank and did not have any attorney. "The fact that a formal written document is anticipated does not preclude enforcement of a specific preliminary promise." Dawson, 977 F.2d at 374 (1992). Defendants' loan was eventually approved, they did consult with an attorney, and defendants remained in possession of and continued to operate Festival Foods. The parties' agreement could have been fleshed out with additional terms, but the essential terms were agreed upon. Louann admitted there was an agreement to purchase Festival Foods for $150,000 but could not recall specifically making an oral agreement on any particular date. "An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined." 810 ILCS 5/2-204(2) (West 2004). Returning the goods at the end of the season was not a rejection of plaintiffs' offer to sell, it was a breach of contract.

### III. CONCLUSION

We conclude there was an agreement to sell Festival

Foods for the price of $150,000 and that defendants breached that agreement.  We reverse the circuit court's judgment and remand for the entry of an order consistent with this opinion.

Reversed and remanded with directions.

MYERSCOUGH and STEIGMANN, JJ., concur.